United States District Court
Southern District of Texas
FILED
JUN 15 2021
Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
**ENTERED**
June 16, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| BLANCA PINA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 7:18-CV-350 |
| § | |
| TEXAS ROADHOUSE HOLDINGS LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Texas Roadhouse LLC's "Motion for Summary Judgment on Plaintiff's Remaining Argument." (Docket No. 34.) Plaintiff filed this civil action against Defendant seeking monetary damages after sustaining "serious and permanent injuries to her body" while dining at the Texas Roadhouse restaurant in McAllen, Texas. (Docket No. 1-1, at 7-8.) In her "Original Petition," Plaintiff alleged that she sustained her injuries when she fell while attempting to exit an elevated booth at the restaurant. (*Id.* at 4.) She further alleged that the cause of her fall was the "dangerous condition" of "peanut shells or husks and/or whole or partial peanuts on the floor." (*Id.* at 4-5.) Plaintiff, who is proceeding pro se, has not filed a response to Defendant's dispositive motion.

After carefully considering the pleadings on file and the applicable law, the undersigned concludes that Defendant's motion for summary judgment should be granted. As discussed below, Plaintiff's new factual theory regarding the potentially greasy/oily condition of the floor and/or peanut shells was not raised in her complaint and is not properly before the court. In addition, Plaintiff has failed to meet her burden to show that Defendant had actual or

constructive knowledge of any unreasonably dangerous condition at the Texas Roadhouse restaurant where Plaintiff fell.

Accordingly, the Court finds that Defendant's motion for summary judgment is granted and this action is dismissed.

## I. BACKGROUND

### A. Factual Background

As noted, this civil action arises from a slip-and-fall at a Texas Roadhouse restaurant on October 8, 2016. (Docket No. 1-1, at 4.) While attempting to exit the elevated booth that she was seated at with her husband, Plaintiff stepped on "peanut shells or husks and/or whole or partial peanuts on the floor," causing her "to slip and fall primarily on her left side." (*Id.* at 5.) Plaintiff later filed a lawsuit in the 332nd Judicial District Court of Hidalgo County, Texas, seeking monetary damages."[1] (Docket No. 1, at 1.) She alleges that the "condition of the premises posed an unreasonable risk of harm for the following reasons:

- a) The peanut shells or husks and/or whole or partial peanuts on the floor were difficult to see because it blended in with the floor.

- b) There was poor lighting in the restaurant.

- c) The dangerous condition was located directly in the path of customer travel.

- d) Plaintiff was unaware of such condition.

- e) No warning was issued to Plaintiff."

---

[1] Plaintiff's underlying lawsuit is styled as "Cause No. C-3692-18-F; "*Blanca Pina vs. Texas Roadhouse Holdings, LLC, Roadhouse Enterprises, Inc., and Texas Roadhouse, Inc.*" (Docket No. 1-1, at 1.) The parties later agreed that the proper defendant in this case is Texas Roadhouse Holding LLC. (Docket No. 21, at 9; Docket No. 25.) As such, the other two named defendants were dismissed from this action. (Docket No. 25.)

(Docket No. 1-1, at 5.) According to Plaintiff, Defendant "knew or should have known that it was a dangerous condition and a hazard to the business invitees." (*Id.*)

Plaintiff's fall "caused [her] to suffer serious and lasting injuries including pain and discomfort to her left shoulder, left arm, neck, back, and her left leg, all of such damages for which she now sues." (*Id.*) She alleges that some of her injuries are "permanent" and that "[i]n all reasonable probability, [she] will suffer long into the foreseeable future, if not for the balance of her natural life." (*Id.* at 7.) As damages, "Plaintiff seeks monetary relief of more than $200,000 but less than $1,000,000" for past and future medical care, physical pain, mental anguish, and physical impairment. (*Id.* at 8.)

**B.     Procedural Posture**

As originally plead, Plaintiff's theory of the cause of her fall was two-fold: 1) "[t]he step-down used to enter and exit the booth Plaintiff was sitting at was not open and obvious"; and 2) "the peanuts and peanut shells strewn across the floor . . . did create an unreasonably dangerous condition." (Docket No. 22, at 1; *see also* Docket Nos. 1, 21, 24, 25.) Based on these arguments, Defendant filed a motion for summary judgement, which the parties briefed and argued before the Court.[2] Ultimately, the Court granted summary judgment in favor of Defendant on these issues. (Docket No. 25, at 1-2.)

However, during oral argument on the motion for summary judgment, Plaintiff espoused a new theory for her slip-and-fall at the Texas Roadhouse restaurant. Specifically, "that a greasy or oily condition on the floor created an unreasonably dangerous condition that contributed to her fall." (Docket No. 25, at 2.) The Court denied summary judgment on this new theory, because

---

[2] This civil action was originally assigned to U.S. Magistrate Judge Peter E. Ormsby. (Docket No. 13.) After Judge Ormsby retired, the case was reassigned to the undersigned. (Docket No. 32.)

"fact issues remain," and because "[s]uch a claim was not directly addressed in the pending motion" for summary judgment.[3] (*Id.*)

On July 31, 2020, approximately two weeks after the Court's ruling, Plaintiff filed an "Unopposed Motion to Withdraw as Counsel and Unopposed Motion for Extension of Discovery Deadline." (Docket No. 27.) In the motion, Plaintiff's retained attorney, Rafael de la Garza, requested to withdraw as counsel because he "and Plaintiff agree that the attorney-client relationship has deteriorated to the point that undersigned counsel can no longer assist Plaintiff in this matter." (*Id.* at 1.) Mr. De la Garza asserted that Plaintiff was "seeking new representation in this matter" and that she "has contacted attorneys in the Houston area." (*Id.*)

In his motion to withdraw as counsel, Mr. De la Garza also requested "an extension of the current discovery deadline . . . in order to allow [Plaintiff] adequate time to retain new counsel." (*Id.* at 1-2.) "Specifically, Plaintiff seeks a ninety-day suspension of the current discovery deadline from such time that her new counsel files a notice of appearance in this matter." (*Id.* at 2.) At the time Mr. De la Garza filed this motion, the deadline to file amended pleadings was August 21, 2020, which was about three weeks later. (Docket Nos. 26, 27.)

On August 28, 2020, one week after the deadline to file amended pleadings expired, the Court granted Mr. De la Garza's motion to withdraw and suspended "the current discovery deadline." (Docket No. 28.) The Court also noted that an "amended scheduling order [would] be entered by separate order" and further advised that "Plaintiff shall retain substitute counsel within thirty (30) days." (*Id.*) The same day, the Court entered its "Second Amended Rule 16 Scheduling Order." (Docket No. 29.) Notably, in the new scheduling order the deadline to file "Amendment of Pleadings" was extended to November 12, 2020. (*Id.*)

---

[3] The Court also expressed "no view on whether [the new theory] has been properly pled or is sufficiently supported." (Docket No. 25, at 2.)

4

In three subsequent hearings, on October 22, 2020, February 24, 2021, and April 14, 2021, Plaintiff informed the Court that she has been unsuccessful in hiring new counsel. In addition, the Court has stressed to Plaintiff what her responsibilities are as a pro se litigant. Plaintiff confirmed her understanding of her responsibilities in this civil action.

**C.      Defendant's Motion for Summary Judgment**

In its motion for summary judgment, Defendant "moves for summary judgment on any alleged claim or argument that there was a 'greasy and/or oily' condition on the floor that caused or contributed to Plaintiff's fall." (Docket No. 34, at 2.) Defendant argues that Plaintiff never plead this theory of the cause of her fall and because of that it "is not properly before the court." (*Id.* at 3.) In addition, even if it were properly plead, Defendant asserts that Plaintiff's claim fails because she is unable to prove the first two elements of a premises liability claim. (*Id.* at 4.) Specifically, Plaintiff is unable to show that Defendant "had actual or constructive knowledge of some condition on the premises" or that the "condition posed an unreasonable risk of harm." (*Id.* at 4-7.)

As noted, Plaintiff has not filed a response to Defendant's motion for summary judgment. However, the Court informed Plaintiff that should she fail to respond to the motion the local rules state that the motion should be considered unopposed.[4] LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").

## II. ANALYSIS

**A.      Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[4] This rule is also referenced in the "Guidelines for Litigants Without Lawyers – Southern District of Texas." *See* Guideline 11.C & 12.

to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Brown v. City of Hous., Tex.,* 337 F.3d 539, 540–41 (5th Cir. 2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson,* 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002).

"The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.,* 501 F. Supp. 2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson,* 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment.

*Anderson*, 477 U.S. at 247–48; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."). A party cannot defeat summary judgment with "'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Rather, a party must support any assertion that a fact cannot be or is genuinely disputed by "(a) citing to particular parts of materials in the record . . . ; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1). Affidavits cannot defeat summary judgment unless they contain competent and otherwise admissible evidence. FED. R. CIV. P. 56(c)(4). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

### B. Failure to Amend Pleadings

In its motion, Defendant first urges that summary judgment is appropriate because "any purported claim as to an alleged greasy and/or oily condition is not before this court." (Docket No. 34, at 3.) Defendant argues that Plaintiff makes "no such allegation" in her Original Petition and has never amended her pleadings to include such a claim. (*Id.*) Defendant is correct.

Upon review of Plaintiff's Original Petition, it is clear that she fails to allege that the floor or the peanut shells themselves were potentially in a "greasy or oily" condition. (Docket No. 1-1, at 2-9.) In addition, as Defendant points out, Plaintiff has never amended her pleadings

7

to include such a claim, despite having numerous opportunities to do so given the several scheduling orders entered by the court.[5] (*See* Docket Nos. 16, 26, 29, 33.)

In fact, the first time Plaintiff mentions "grease" as potentially contributing to the cause of her fall is during her deposition, which was taken on July 11, 2019. (Docket No. 22-1.) Specifically, when asked if she thought there "were any other factors that caused or contributed to [her] fall other than [her] stepping down from the booth" Plaintiff responded as follows: "So

---

[5] The following chart is intended to illustrate the numerous opportunities Plaintiff had to amend her pleadings, both while she was still being represented by Mr. De la Garza, and as a pro se litigant.

| Date | Docket Entry | Party Activity | Court Action | Relevant Deadline | Relevant Information |
|---|---|---|---|---|---|
| 4-20-19 | 16 | | Scheduling Order | Amended Pleadings due by 11/1/19 | |
| 7-11-19 | | Plaintiff's Deposition | | | Plaintiff first mentions potentially greasy/oily condition |
| 12-6-19 | 20 | Motion to Extend Discovery | | | |
| 12-12-19 | 21 | Defendant's MSJ | | | |
| 12-30-19 | 22 | Plaintiff's response to MSJ | | | "Greasy/oily" argument not raised |
| 1-6-20 | 23 | | Order Granting Motion to Extend Discovery | | |
| 1-9-20 | Unnumbered Minute Entry | Oral Arguments on Defendant's MSJ | | | "Greasy/oily" argument raised for the first time |
| 6-23-20 | Unnumbered Minute Entry | | Court deferred ruling on greasy argument | | |
| 7-17-20 | 26 | | Amended Scheduling Order | Amended Pleadings due by 8-21-20 | |
| 7-31-20 | 27 | Motion to Withdraw | | | |
| 8-28-20 | 28 | | Order Granting Motion to Withdraw | | |
| 8-28-20 | 29 | | 2nd Amended Scheduling Order | Amended Pleadings due by 11-12-20 | |
| 3-5-21 | 33 | | 3rd Amended Scheduling Order | Amended Pleadings due by 3-19-21 | |

when I got out, there was more peanuts there and whole peanuts, and that's what I thought had caused the fall, the whole peanuts plus the peanut shells *and probably the grease that the whole peanuts have.*" (*Id.* at 22 (emphasis added).) Plaintiff was informed that Texas Roadhouse does not "use any grease or oil on the peanuts." (*Id.*) Plaintiff then implied that "you can tell that the floor was greasy." (*Id.*) However, after touching peanuts and peanut shells on the floor, Plaintiff did not check to see if her hands "were greasy or oily." (*Id.* at 23.) Plaintiff concluded that in her opinion the cause of her fall was "because of the peanuts and the stepping down" from the elevated booth. (*Id.*)

Notwithstanding Plaintiff's testimony at her deposition, she did not move to amend her pleadings to include a claim that her fall was caused by a "greasy or oily" condition of the peanuts or the floor.[6] In addition, Plaintiff did not include such an argument in her response to Defendant's original motion for summary judgment.[7] (*See* Docket No. 22, at 1-9); *Cutrera v. Bd. of Supervisors of LSU*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004) (The Fifth Circuit declined to consider Appellant's argument because the "new factual theory was not raised in her complaint, nor raised in her opposition to Appellee's motion for summary judgment.")).

---

[6] At the time of her deposition (July 11, 2019), Plaintiff, who was still being represented by Mr. De la Garza, had over three months to amend her pleadings, given the controlling scheduling order. (*See* Docket No. 16.)

[7] Although the deadline to file amended pleadings expired prior to Mr. De la Garza filing his response to Defendant's motion for summary judgement, the parties had also filed an "Agreed Motion to Continue Discovery Deadline," which the Court later granted. (Docket Nos. 20, 22, 23.) In its order granting the motion to extend discovery, the Court extended the discovery deadline to 45 days after its ruling on Defendant's motion for summary judgment. (Docket No. 23.) After the Court deferred its ruling on Plaintiff's "greasy/oily" condition argument, it extended the deadline to file amended pleadings to August 21, 2020. (*See* Docket Nos. 25, 26.) Mr. De la Garza still represented Plaintiff partially during this time. (*See* Docket No. 27 (motion to withdraw filed on July 31, 2020).)

9

Case 7:18-cv-00350   Document 37   Filed on 06/15/21 in TXSD   Page 10 of 16

On the other hand, Plaintiff's counsel did argue the alleged "greasy and/or oily" condition of the peanuts and/or floor at the hearing on the motion for summary judgment. (*Compare* unnumbered Minute Entry dated January 9, 2020, *with* Docket No. 25.) However, a claim that is raised not in the complaint, and only for the first time "in response to a motion for summary judgment is [also] not properly before the court." *Cutrera*, 429 F.3d at 113 (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

Here, Plaintiff has wholly failed to amend her pleadings, or move to amend her pleadings, to include the "new factual theory [that] was not raised in her complaint" regarding the potentially greasy/oily condition of the floor and/or peanut shells. *Cutrera*, 429 F.3d at 113. Because this claim "is raised not in the complaint, and only for the first time in response to a motion for summary judgment, [it] is not properly before the court" and should be dismissed. *Id.*

### C.  Premises Liability

Next, in its motion for summary judgment, Defendant asserts (primarily) that Plaintiff is unable to prove her premises liability claim. (Docket No. 34, at 4.) "Under Texas law, '[g]enerally, premises owners ... have a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owners knew of the conditions or, in the exercise of reasonable care, should have known of them.'" *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014). "To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury;
>
> (2) the condition posed an unreasonable risk of harm;

10

(3) the property owner failed to take reasonable care to reduce or eliminate the risk; and

(4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee."

*McCarty*, 864 F.3d at 358 (quoting *Henkel*, 441 S.W.3d at 251-52). As noted, Defendant "Texas Roadhouse moves for summary judgment on elements 1 and 2." (Docket No. 34, at 4.)

1. Actual or Constructive Knowledge

"The Supreme Court of Texas has identified three methods by which a plaintiff may satisfy the knowledge element in a slip-and-fall case." *McCarty*, 864 F.3d at 358 (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814–15 (Tex. 2002)). "First, a plaintiff may 'establish[ ] that ... the defendant placed the substance on the floor.'" *McCarty*, 864 F.3d at 358 (quoting *Reece*, 81 S.W.3d at 814). "Second, a plaintiff may 'establish[ ] that ... the defendant actually knew that the substance was on the floor.'" *McCarty*, 864 F.3d at 358 (quoting *Reece*, 81 S.W.3d at 814). "Third, a plaintiff may 'establish[ ] that ... it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.'" *McCarty*, 864 F.3d at 358 (quoting *Reece*, 81 S.W.3d at 814).

"In all cases, however, 'there must be *some* proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition.'" *McCarty*, 864 F.3d at 359-60 (quoting *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002)). Stated another way, "[w]ithout some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Reece*, 81 S.W.3d at 816. This is referred to as the "time-notice rule" and it is "firmly rooted in [Texas] jurisprudence." *Id.* at 815.

11

In fact, "the lynchpin of a constructive notice analysis is temporal evidence." *Pena v. Home Depot U.S.A., Inc.*, 32 F. Supp. 3d 792, 800 (S.D. Tex. 2013).

"Plaintiffs may rely upon both direct and circumstantial evidence of a defendant's knowledge." *McCarty*, 864 F.3d at 358 (citing *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 935–36 (Tex. 1998)). "Circumstantial evidence must 'either directly or by reasonable inference' support the conclusion that the defendant had knowledge of the alleged risk." *McCarty*, 864 F.3d at 358 (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 394 (Tex. 2016)). "'An inference is not reasonable if premised on mere suspicion—some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.'" *McCarty*, 864 F.3d at 358 (quoting *Sampson*, 500 S.W.3d at 394).

As discussed below, Plaintiff has not identified evidence from which a jury could, under any of the three methods of proof outlined in *McCarty*, conclude that Defendant Texas Roadhouse had actual or constructive knowledge of the restaurant floor's allegedly dangerous condition. "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Thurwanger v. Target Corp.*, No. 4:14-cv-243, 2015 WL 137251, at *1 (E.D. Tex. Jan. 7, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

As noted, the first time Plaintiff mentions "grease" as potentially contributing to the cause of her fall was during her deposition. (Docket No. 22-1); *see supra* Part II.B. Specifically, Plaintiff stated the following:

- "[T]hat's what I thought had caused the fall, the whole peanuts plus the peanut shells and probably the grease that the whole peanuts have."
- After being informed that Texas Roadhouse does not "use any grease or oil on the peanuts," Plaintiff implied that "you can tell that the floor was greasy."

12

- However, after touching peanuts and peanut shells on the floor, Plaintiff did not check to see if her hands "were greasy or oily."
- Plaintiff concluded that in her opinion the cause of her fall was "because of the peanuts and the stepping down" from the elevated booth.

(Docket No. 22-1, at 22-23.) During his deposition, Joaquin Rodriguez, the managing partner at the Texas Roadhouse restaurant where Plaintiff was injured, stressed that any "[k]nown dangers on the premises, whether inside or out . . . we would attack immediately." (Docket No. 22-2, at 9.) He also pointed out that the busboys do not clean the floors with any cleaning products in between customers and that if there was a "hazardous" condition caused by "an excessive amount of peanuts" they "would take care of it." (*Id.* at 13, 21.)

Here, Plaintiff's cursory and unsupported allegation falls far short of meeting her burden to establish that Defendant had actual knowledge that there was an oily or greasy condition at the restaurant that contributed to or caused her fall. *Thurwanger*, 2015 WL 137251, at *1. In addition, Plaintiff has wholly failed to allege any "temporal evidence" that a jury could consider in order to impart "constructive notice" to Defendant. *Reece*, 81 S.W.3d at 816 ("[w]ithout some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition."); *see also Pena*, 32 F. Supp. 3d at 800. As such, summary judgment as to the first element (actual or constructive knowledge) is proper.

2. <u>Unreasonably Dangerous Condition</u>

Finally, under Texas law, "'as a general rule the landowner owes a duty to [invitees] to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not.'" *Ardelean v. Wal-Mart,*

13

*Inc.*, 838 F. App'x 852, 854 (quoting *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020)). "Only unreasonably dangerous conditions give rise to premises liability." *Ardelean*, 838 F. App'x at 854. "While property owners must exercise ordinary care to keep [their] premises in a reasonably safe condition, Texas follows the established common law principle that an owner or possessor of property is not an insurer of the safety of those on the premises." *Id.* (internal citations omitted). "Merely because a condition causes an injury does not make it unreasonably dangerous."[8] *Ardelean*, 838 F. App'x at 854 (citing *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006) ("A condition is not unreasonably dangerous simply because it is not foolproof.")).[9]

"Therefore, a plaintiff 'must establish that the premises owner knew or should have known of a dangerous condition on the premises that presented an unreasonable risk of harm.'" *Ardelean*, 838 F. App'x at 854 (quoting *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007)). "An unreasonable risk is one that poses foreseeable harm." *Ardelean*, 838 F. App'x at

---

[8] "Texas law holds that many conditions of a premises may pose a risk of harm, but not necessarily an unreasonable one." *Thurwanger*, 2015 WL 137251, at *2. "For example, 'dirt containing small rocks is not an unreasonably dangerous condition for which a landlord may be held liable as a matter of law.'" *Thurwanger*, 2015 WL 137251, at *2 (quoting *Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 287 (Tex. 1996)). "Similarly, naturally accumulating mud or ice, accumulating without the assistance of unnatural contact, is not a condition posing an unreasonable risk of harm." *Thurwanger*, 2015 WL 137251, at *2 (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 676 (Tex. 2004), and *Scott and White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 414 (Tex. 2010)). In addition, "the Texas Supreme Court [has] 'rejected the argument that stairs were unreasonably dangerous merely because the premises owner knew they would eventually become unstable with use.'" *Thurwanger*, 2015 WL 137251, at *2 (quoting *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006)).

[9] *But see City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536-37 (Tex. 1996) (The Texas Supreme Court held that water on the floor of a basketball court could be an unreasonably dangerous condition, but not the leaky roof that would eventually allow water to drip onto the floor if it rained.); *H.E.B. Grocery Co. v. Resendez*, 988 S.W.2d 218, 218–19 (Tex. 1999) (The Texas Supreme Court held that a grocery store's self-service display of loose grapes standing on a non-skid floor and surrounded by mats and warning cones was not an unreasonably dangerous condition; rather, the grape on which the plaintiff slipped was the dangerous condition.).

854-55 (citing *Seideneck*, 451 S.W.2d at 754 (asking whether "there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen") (citing, inter alia, RESTATEMENT (SECOND) OF TORTS § 283 (1965))).

As Defendant points out, one factor in determining whether a condition is unreasonably dangerous is whether there have been other similar incidents or complaints. (Docket No. 34, at 7 (citing *Brinson Ford v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007).) In *Alger*, the court found it persuasive that "[n]o other customer visiting the property over a ten-year period had ever been injured" in a manner similar to Plaintiff. *Alger*, 228 S.W.3d at 163. In addition, the court noted that it was telling that the property had not "received complaints" similar to Plaintiffs. *Id.* Here, there is no evidence that any customer—other than allegedly Plaintiff—has fallen at Texas Roadhouse due to a greasy and/or oily condition on the floor, or because of greasy and/or oily peanut shells. In fact, Rita Wells, the manager on duty on the day that Plaintiff fell, stated that "there were no reports or complaints of any greasy or oily substance on the floor."[10] (Docket No. 34-2, at 1.) Ms. Wells also stated that on that day "there were no reports or complaints of anyone slipping or tripping in this area."[11] (*Id.*)

Here, as in *Alger*, it is telling that there is no evidence of any other similar incidents or complaints.[12] This shows a lack of "foreseeable harm." *Ardelean*, 838 F. App'x at 854-55

---

[10] During his deposition, Mr. Rodriguez stated that the busboys clean the tables and seats with a rag and "then use a peroxide spray"; however, they do not wipe the floors with any chemicals. (Docket No. 22-2, at 21.)

[11] During his deposition Mr. Rodriguez stated that if there were "an excessive amount of peanuts" or "if it was something that was hazardous, I think we would take care of it." (Docket No. 22-2, at 13.)

[12] In its response to Defendant's motion for summary judgment, Plaintiff makes reference to three other lawsuits that have been filed against Defendant in the last seven years. (Docket No. 22, at 8; Docket No. 22-3.) Plaintiff alleges that these lawsuits were for "slip and fall

(citing *Seideneck*, 451 S.W.2d at 754). Perhaps more importantly, Plaintiff has failed to establish that "the premises owner knew or should have known of a dangerous condition on the premises."[13] *Ardelean*, 838 F. App'x at 854 (quoting *Alger*, 228 S.W.3d at 162). Here again, "[t]he purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Thurwanger*, 2015 WL 137251, at *1 (citing *Catrett*, 477 U.S. at 327).

Even assuming that there was an oily and/or greasy condition on the floor or the peanut shells, Plaintiff has failed to meet her burden to show that the alleged condition was unreasonably dangerous. *Ardelean*, 838 F. App'x at 854 ("Merely because a condition causes an injury does not make it unreasonably dangerous."). As such, summary judgment as to the second element (unreasonably dangerous condition) is proper.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** that "Defendant's Motion for Summary Judgment on Plaintiff's Remaining Argument" (Docket No. 34.) is **GRANTED** and this action is dismissed. Final Judgment will be entered by separate order.

DONE at McAllen, Texas on June 15, 2021.

Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE

---

accidents related to peanuts and peanut shells on the floor of their restaurants." (Docket No. 22, at 8.) However, as Defendant points out, the incidents in those lawsuits took place at different Texas Roadhouse locations, contain mere allegations, and are not relevant. (Docket No. 24, at 4.) More importantly, the lawsuits do not contain an allegation that the floor or peanut shells were "greasy or oily," which is what is at issue in this civil action. (*See* Docket No. 22-3.)

[13] During his deposition Mr. Rodriguez stated that in the past "eight-and-a-half years" he could only recall two other instances of patrons falling at the location. (Docket No. 22-2, at 13.) Only one of those incidents involved peanuts on the floor. (*Id.* at 14.) However, there is no indication that either of the incidents involved an allegation that the floor or peanut shells were "greasy or oily."